**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TRACY S. SMITH,** | ) | |
| Petitioner, | ) | **Civil Action No. 9-288 Erie** |
| | ) | |
| v. | ) | **District Judge Sean J. McLaughlin** |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **LOUIS FOLINO, et al.,** | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.      RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

## II.      REPORT

### A.      Relevant Background

On November 8, 2005, a Criminal Information was filed against Petitioner, Tracy S. Smith, charging him with one count of criminal homicide in the killing of his girlfriend, Sonya Wolfe. He was also charged with one count each of aggravated assault and abuse of a corpse. The court appointed Daniel J. Brabender, Jr., Esq., to be his attorney.

On May 22, 2006, the Commonwealth filed a Motion *In Limine* in which it sought to introduce evidence of prior violent incidents that occurred between Petitioner and Wolfe, including the following:

— In May of 2006, Petitioner was charged with abduction, malicious wounding, and assault/battery in Chesterfield County, Virginia. Petitioner allegedly struck Wolfe in the face and head, kicked her in the head and torso, and threatened to kill her with a knife. Afterwards, he urinated on her while she was lying on the ground. Wolfe received

1

medical treatment for fractures to her nasal cavity and extensive bruising to her head and arms. She reported the incident to the police.

— In March of 2004, the police in Chesterfield County, Virginia, responded to a domestic dispute at a hotel that occurred between Petitioner and Wolfe. Allegedly, the hotel staff discovered Wolfe running down the hallway asking for help. She stated Petitioner was drinking and had grabbed her by the shoulders and thrown her to the floor. Petitioner was charged with simple assault/domestic.

The Commonwealth also sought to introduce: Wolfe's statements to the hospital staff and police regarding the May of 2006, incident; her statements to the hotel staff and to the police regarding the March of 2004, incident; and, statements she made to her family and friends about Petitioner's abuse. It did not identify any potential witness by name. The Commonwealth broadly contended that the evidence was admissible under Pa.R.E. 404(b) to demonstrate motive, intent, absence of mistake or accident and *res gestae* or natural history of the case. It also asserted that Wolfe's statements to her family and friends were admissible under the state of mind exception to the hearsay rule. See Pa.R.E. 803(3). (CP Dkt. No. 10).

In response, Petitioner filed an Omnibus Pre-Trial Motion in which he sought to suppress Wolfe's out-of-court statements. He argued, *inter alia*, that the admission of those statements would violate his rights under the Confrontation Clause. (CP Dkt. No. 11).

The Sixth Amendment's Confrontation Clause provides: "in all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him." U.S. Const., Amend. VI. The Fourteenth Amendment renders the Clause binding on the States. Pointer v. Texas, 380 U.S. 400, 403 (1965). The U.S. Supreme Court observed in Ohio v. Roberts, 448 U.S. 56, 63 (1980) that: "If one were to read this language literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial. But, if thus applied, the Clause would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." In an effort to accommodate

2

the competing interest of the Confrontation Clause's preference for face-to-face confrontation at trial against a jurisdiction's strong interest in effective law enforcement and the development and precise formulation of the rule of evidence applicable in criminal proceedings, in <u>Roberts</u> the Court set forth a general approach to determining whether the admission of a statement made by an unavailable declarant violates the Confrontation Clause. <u>Id.</u> at 64-65. It held that when a declarant is unavailable at trial, the Confrontation Clause requires that his or her statement is admissible only if it bears adequate "indicia of reliability." <u>Id.</u> at 66. Under <u>Roberts</u>, "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." <u>Id.</u>

In 2004, the U.S. Supreme Court decided <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) and overruled <u>Roberts</u>. After reviewing the Confrontation Clause's historical underpinnings, the Court held that it guarantees a defendant's right to confront those "who bear testimony" against him. <u>Crawford</u>, 541 U.S. at 51. It concluded that <u>Roberts</u> potentially excluded too much testimony because it imposed Confrontation Clause restrictions on nontestimonial hearsay not governed by that Clause. <u>Id.</u> at 60. <u>See also</u> <u>Whorton v. Bockting</u>, 549 U.S. 406, 413-14, 420 (2007). At the same time, the <u>Crawford</u> Court noted, the <u>Roberts</u> test was too "malleable" in permitting the admission of *ex parte* testimonial statements. <u>Id.</u> It concluded:

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.' ... Admitting statements deemed reliable by a judge is fundamentally at odds with the right to confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.

<u>Id.</u> at 61.

The _Crawford_ Court held that the Confrontation Clause prohibits out-of-court _testimonial_ statements by a witness, regardless of whether the statements are deemed reliable by the trial court, unless (1) the witness is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness. Id. at 51-54. When an out-of-court statement is non-testimonial, its "admissibility … is the concern of state and federal rules of evidence, not the Confrontation Clause." Michigan v. Bryant, — U.S. — , 131 S.Ct. 1143, 1155 (2011); id. at 1153 (in Crawford, "[w]e therefore limited the Confrontation Clause's reach to testimonial statements[.]"). Whorton, 549 U.S. at 420 ("Under Roberts, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability. Under Crawford, on the other hand, the Confrontation Clause has no application to such statements and therefore permits their admission even if they lack indicia of reliability.").

In Petitioner's case, the trial court held a pre-trial hearing to address the issues raised by the parties' motions. At the hearing, the Commonwealth reiterated that it was its intent to call the police to testify as to statements that Wolfe had made to them. It also identified seven family members and/or friends of Wolfe's that it intended to call. (See 6/6/06 Hr'g Tr. at 15).

On July 3, 2006, the trial court issued a Memorandum Opinion and Order in which it denied Petitioner's suppression requests and granted the Commonwealth's Motion _In Limine_ to introduce evidence of the prior violent acts between Petitioner and Wolfe. (CP Dkt. No. 16, Commonwealth v. Crawford, 3293 of 2005, slip op. (C.P. Erie July 3, 2006)). It held that evidence of the prior bad acts was admissible under Pa.R.E. 404(b)(2) Other Crimes, Wrongs, or Acts (demonstrating motive, intent, absence of mistake or accident). (Id. at 3-5). It also held that Wolfe's out-of-court statements made to hotel/hospital staff and family and friends were nontestimonial. Therefore, the Confrontation Clause protections did not apply to those statements. (Id. at 11). It further held that those statements were

4

admissible under state law evidentiary rules, including Pa.R.E. 803(3). (<u>Id.</u> at 5-9). The trial court did decide, however, that the Commonwealth could not introduce the statements that Wolfe had made to the police officers because those statements were testimonial in nature and thus barred under <u>Crawford</u>.

On July 14, 2006, after a five-day trial, the jury found Petitioner guilty of first-degree murder and abuse of a corpse.[1] He presented a diminished capacity defense based upon his voluntary intoxication, asserting that he was too drunk to have the specific intent to kill. <u>Commonwealth v. Marshall</u>, 810 A.2d 1211 (Pa. 2002) (a showing of voluntary intoxication can negate the intent necessary for a conviction of first degree murder and reduce the crime of murder from first to third degree). The jury rejected Petitioner's defense.

The Superior Court subsequently summarized the evidence introduced at Petitioner's trial as follows:

> [Petitioner] and Ms. Wolfe had a long term romantic relationship. At 10:30 P.M. on August 13, 2005, witnesses saw and heard [Petitioner] and Ms. Wolfe arguing at a bar. The bar owner told [Petitioner] to leave, and [he] did so. The victim (Wolfe) followed [Petitioner] after he left the bar, about fifteen minutes later. The argument continued in the parking lot and the bar owner testified that he heard [Petitioner] yell at the victim: "get the hell away from the car or I'll kill you." [Petitioner] then drove off without the victim and was stopped almost immediately by the police. Because [Petitioner's] vehicle was not registered, the police arranged for it to be towed to an impound location. (N.T. Trial, 7/11/06, at 115). The tow truck operator testified that [Petitioner] stated that he might "end up killing" Wolfe. Another patron at the establishment testified that [Petitioner] had asked to borrow her van so he could find Wolfe and kill her. (N.T. Trial, 7/10/06, at 46).
>
> At 1:45 A.M. on August 14, 2005, [Petitioner] visited another bar. While [he] was assisting that bartender in cleaning up, Wolfe called [him] by telephone. The bartender drove [Petitioner] to meet Wolfe and additional witnesses saw [Petitioner] and Wolfe walking together at about 9:30 A.M. the following morning. At about 11:30 A.M., [Petitioner] unsuccessfully sought to shower at a friend's house; later that day, [he] washed his shirt at a bar and then threw it away in the dumpster behind the bar, where it was later found by police. (N.T. Trial, 7/12/06, at 90-92, 142-44).

---

[1] The Commonwealth *nolle prossed* the aggravated assault charge.

Police went to Wolfe's home on August 15, 2005, having received a report that she had been strangled. [Petitioner] was at Wolfe's home when the police arrived and requested that a missing person report be filed with respect to the victim's disappearance. [Petitioner] was interviewed by the police and ultimately admitted that he had killed Wolfe. (Trial Court Opinion 12/6/06, p. 2). Wolfe's body was not found until August 18, 2005. The autopsy disclosed signs of blunt force trauma and established that the cause of death was asphyxiation due to strangulation.

- - -

The trial testimony abounded with evidence from which the jury could have concluded that [Petitioner's] conduct was both premeditated and deliberate. [Petitioner] had a history of significant physical violence toward Wolfe, extending back to 2002 when they had lived together in Virginia. (N.T. Trial, 7/11/06, at 77; 7/13/06, at 30-34). Wolfe expressed fears, on more than one occasion and to more than one person, that [Petitioner] would kill her. (N.T. Trial, 7/11/06, at 60; 7/13/06, at 32). On both the night of August 13, 2005, and in the early morning hours of August 14, 2005, [Petitioner] threatened to kill Wolfe; his car struck her (apparently glancingly) as he drove away from the bar; he attempted to borrow a vehicle for the express purpose of hunting Wolfe down and killing her; and he told a tow truck driver that he would probably wind up killing Wolfe. (N.T. Trial, 7/11/06, at 75, 139; 7/12/06, at 46-47). Moreover, there was testimony supported by physical evidence that Wolfe was severely beaten and that strangulation must have lasted some four to six minutes. (N.T. Trial, 7/13/06, at 64-66, 69, 70-75)….

Although there was testimony that [Petitioner] had consumed alcoholic beverages during the night in question, only one witness characterized him as being intoxicated, and that observation concerned his mental state of being while at the first bar, on the night of August 13, 2005. (N.T. Trial, 7/11/06, at 100-02). Neither the police officer who stopped [Petitioner's] car after he left that first bar, nor another officer present on the scene, assessed [Petitioner's] mental state as an intoxicated one. (N.T. Trial, 7/11/06, at 116-17, 120-21). Perhaps most telling is the fact that the last witness who observed [Petitioner] and Wolfe together on the morning of August 14, 2005, before her death, did not observe any signs that [Petitioner] was intoxicated, and witnesses who saw [Petitioner] after Wolfe's death also did not observe him to be in an intoxicated state. (N.T. Trial, 7/12/06, at 80-84, 90-92).

Against this factual backdrop, [Petitioner] offered one single "non-fact" witness, an expert psychiatrist, who essentially testified that [Petitioner] was likely to have been highly intoxicated on alcohol at the time that he killed Wolfe, based upon the testimony of witnesses, and that if [Petitioner] also ingested cocaine and benzodiazepines, as [Petitioner] had claimed, he would have been sufficiently intoxicated to be unable to form the specific intent to kill Wolfe…. Notwithstanding this expert testimony, in the absence of any testimony from the fact witnesses indicating that [Petitioner] was in fact overwhelmed by intoxicants at the time of the killing, the jury was free to conclude that [he] was capable of the requisite intent to kill at the time that the victim was killed.

(CP Dkt. No. 38, <u>Commonwealth v. Smith</u>, No. 1846 WDA 2006, slip op. (Pa.Super. Aug. 14, 2007)).

On August 30, 2006, the court sentenced Petitioner to life imprisonment on his first-degree murder conviction, and a concurrent sentence of 12-24 months' imprisonment on his conviction of abuse of a corpse. In his direct appeal, Petitioner, through Assistant Public Defender Tina M. Fryling, Esq., asserted that there was insufficient evidence to support his conviction of first-degree murder. He also argued that the jury's verdict was against the weight of the evidence. On August 14, 2007, the Superior Court affirmed his judgment of sentence. (CP Dkt. No. 38, <u>Smith</u>, No. 1846 WDA 2006, slip op. at 3-7).

On March 19, 2008, Petitioner filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. (CP Dkt. No. 40). The PCRA Court appointed William J. Hathaway, Esq., to represent him. On June 9, 2008, the PCRA Court issued a 31-page Notice of Intent to Dismiss PCRA pursuant to Pa.R.Crim.P 907. (CP Dkt. No. 42, <u>Commonwealth v. Smith</u>, 3293 of 2005, slip op. (CP Erie Jun. 9, 2008)). On July 1, 2008, after consideration of Petitioner's response to its notice (CP Dkt. No. 43), the PCRA Court denied relief. (CP Dkt. No. 45). The Superior Court affirmed in a Memorandum issued March 16, 2009. It determined that Petitioner's claims had no merit for the reasons expressed by the trial court in its pre-trial Memorandum denying the defense's motion to suppress, and in the PCRA Court's decision, which it adopted in full. (CP Dkt. No. 59, <u>Commonwealth v. Smith</u>, No. 1240 WDA 2008, slip op. (Mar. 16, 2009)).

In the present action, Petitioner raises the following three claims:

Claim 1     The admission of five[2] separate witnesses' highly prejudicial hearsay testimony violated Petitioner's Sixth Amendment right under the Confrontation Clause to confront witnesses against him as articulated in <u>Pointer v. Texas</u>, 380 U.S. 400 (1965). Trial and appellate counsel

---

[2]     Petitioner actually objects in this claim to Wolfe's out-of-court statements introduced through the testimony of *six* witnesses. One of those witnesses is Carol Pond, whose testimony regarding Wolfe's statements to her is the subject of Claim 2. Accordingly, Petitioner's specific objection to Pond's testimony is addressed in Claim 2.

rendered ineffective assistance for failing to object and argue at trial, post-trial, and/or on direct appeal that the trial court had abused its discretion in permitting the introduction of the testimony.

Claim 2      Trial and appellate counsel were constitutionally ineffective for failing to object at trial and/or raise on appeal that the admission of Carol Pond's hearsay testimony violated the prohibition against testimonial hearsay as articulated in Crawford v. Washington, 541 U.S. 36 (2004).

Claim 3      Trial counsel was constitutionally ineffective for failing to object to the highly prejudicial remarks made by the prosecutor during closing argument to the jury which deprived Petitioner of his Sixth Amendment right to effective assistance of counsel.

(ECF No. 1 at 11-19). He also has filed a 46-page brief in support of his petition, to which he has attached exhibits that he also presented to the state court. (ECF No. 14). Respondents have filed their Answer (ECF No. 12) and the relevant state court records.

## B.    Discussion

### 1.    Standard of Review

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under that statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'"), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

As codified at 28 U.S.C. § 2254(d), AEDPA restricts a federal court's authority to grant relief when the state court has "adjudicated on the merits" the petitioner's federal constitutional claims. "[F]or the purposes of [§]2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when

a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." Thomas v. Horn, 570 F.3d 105, 117 (3d Cir. 2009), *cert. denied sub nom.* 130 S.Ct. 1879 (2010). When the state court has adjudicated a claim on the merits, federal habeas relief may only be granted when the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision that was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).[3] Review by the federal court also is limited to the record that was before the state court. Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011).

When the state court has not "adjudicated a claim on the merits," the federal habeas court applies *de novo* review to the claim. See, e.g., Thomas, 570 F.3d at 124.

## 2. Ineffective Assistance of Counsel

In each of his claims, Petitioner contends that he received ineffective assistance of counsel in violation of his rights guaranteed under the Sixth Amendment. In order to show trial counsel rendered constitutionally ineffective assistance, a petitioner must demonstrate: (1) that counsel's performance was

---

[3]      "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'"  Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 405-06.  "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular…case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'"  Id. at 234, quoting Williams, 529 U.S. at 407.

unreasonable; and (2) that the deficient performance actually prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

The first prong of the <u>Strickland</u> test requires a petitioner to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Id.</u> at 688. Obviously, when a petitioner claims that his counsel failed to raise a claim that the court determines to be meritless, habeas relief under <u>Strickland</u> is not available. <u>See id.</u> at 691 (the failure to pursue "fruitless" claims "may not be challenged as unreasonable.") It is all too easy to second-guess counsel after conviction: without benefit of hindsight, petitioner must overcome the presumption that under the circumstances, the challenged action of counsel "might be considered sound trial strategy." <u>Id.</u> at 689. As the Third Circuit Court of Appeals has explained, "[i]t is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." <u>United States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir.1997).

The second prong of the <u>Strickland</u> test that a petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. In other words, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Court in <u>Strickland</u> also noted that although it had discussed the performance component of an effectiveness claim prior to the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order. <u>Id.</u> at 697. Consequently, if it is more efficient to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, this course should be followed. <u>Id.</u>

10

**3.    The Admission of Wolfe's Out-of-Court Statements Through the Testimony of Christina Potter, Don Plonski, Linda Hilinski, Elaine St. Onge, and Mildred Wolfe**

Petitioner contends that each of the above-cited witness's trial testimony, in which they recounted Wolfe's out-of-court statements to him or her, violated his rights under the Confrontation Clause, and that his trial counsel was ineffective for not reasserting an objection to their testimony during the trial, and that his appellate counsel were ineffective for not objecting on direct review. The state court denied this claim on the merits. (See CP Dkt. No. 59, Smith, No. 1240 WDA 2008, slip op. at 5; CP Dkt. No. 42, Smith, 3293 of 2004, slip op. at 7-11; CP Dkt. No. 16, Smith, No. 3293 of 2005, slip op. at 9-11). Accordingly, AEDPA's deferential standard of review applies.

Because the state court applied the correct legal standard when it evaluated Petitioner's claims of ineffective assistance, see Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard), the state court's adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). See Williams, 529 U.S. at 406. Thus, the only question for this Court to decide with regard to this particular claim (and Claim 3, discussed *infra*) is whether the state court's adjudication of it was an "unreasonable application of" Strickland or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). In conducting this analysis the Court is cognizant that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. 111, 129 S.Ct. 1411, 1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether

11

counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 131 S.Ct. at 788.

(a)

Christina Potter was the manager of a bar that Wolfe frequently patronized.  Petitioner contends that the italicized portion of the following testimony given by Potter at his trial was hearsay and was introduced in violation of his rights under the Confrontation Clause:

| | |
|---|---|
| Prosecutor: | Did you have any conversations with Sonya about her feelings about the defendant? |
| Potter: | Yes. |
| Prosecutor: | And what's the substance of those conversations? |
| | - - - |
| Potter: | I want to say maybe 2004, close to 2005…. And she used to come in there a lot, her and Linda and a bunch of her girlfriends, and if it was slow, we'd all just talk, general talk.  And we'd get on a conversation about boyfriends, relationships *and she would always say, you know, I don't know why I'm with [Petitioner], he's abusive, one of these days he's going to kill me,* and she kept repeating it and repeating it. |

(7/11/06 Trial Tr. at 59-60 (emphasis added)).

Don Plonski is the owner of the bar that Wolfe frequently patronized.  Petitioner contends that the italicized portion of the following testimony given by Plonski was inadmissible double hearsay and was introduced in violation of his rights under the Confrontation Clause:

| | |
|---|---|
| Prosecutor: | On the evening of August 13th of last year, were you inside of your establishment, Scooter's? |
| Plonski: | Yes, I was. |
| | - - - |

12

| | |
|---|---|
| Prosecutor: | Okay. Did you see Sonya Wolfe and the defendant in the bar that night? |
| Plonski: | Yes. |
| | - - - |
| Plonski: | [Petitioner] was down by the door, which would be our side door, and then Sonya jumped off the bar stool and ran down there shouting, started screaming at him, and my barmaid told him and then I went down there and I told them to break it up. She went back and sat down and then Linda Hilinski come over to me, she was with Sonya.... *And she told me that [Petitioner] threatened to kill her with a knife.* |
| Prosecutor: | Threatened to kill who with a knife? |
| Plonski: | Sonya. |

(7/11/06 Trial Tr. at 72-74).

Linda Hilinski was Wolfe's friend. Petitioner contends that the italicized portion of the following testimony given by Hilinski was inadmissible hearsay and introduced in violation of his rights under the Confrontation Clause:

| | |
|---|---|
| Prosecutor: | Were you talking [at the bar on August 13, 2005, about Wolfe's] relationship with the defendant at all? |
| Hilinski: | Yes.... *She said that she had enough, meaning from him. She said she wanted to call it quits that night.* |
| | - - - |
| | She was tired of not being happy. *She told me she was tired of all the beatings that she had. She told me that, and that was about it.* And then I just talked to her, why don't you want to be happy with someone who really loves and cares about you and treats you good. And she said, yeah. |

(7/11/06 Trial Tr. at 91, 94 (emphasis added)).

Elaine St. Onge was another one of Wolfe's friends. Petitioner contends that the italicized portion of the following testimony given by Onge was inadmissible hearsay and introduced in violation of his rights under the Confrontation Clause:

| | |
|---|---|
| Prosecutor: | And what did she [Wolfe] say about an incident in Virginia or West Virginia? |
| Onge: | *That he took her out in the woods and gave her a beating.* |
| Prosecutor: | What else? |
| Onge: | *Just that he had taken her out into the woods so that nobody could hear her scream. And that he beat her pretty good, that's all.* |

(7/10/06 Trial Tr. at 94 (emphasis added)).

Finally, Petitioner objects to the following portion of the victim's mother's, Mildred Wolfe's, trial testimony:

| | |
|---|---|
| Prosecutor: | What did [Sonya Wolfe] tell you about the trouble in Virginia, specifically, if you know? |
| M. Wolfe: | Other than that they didn't get along and he took her out this one night. |
| Prosecutor: | Yes. |
| M. Wolfe: | She said she didn't realize at first where they were going, that he had her out there a few nights before that and that she tried to get out of the truck when she realized where he was taking her, but she said he held on her to and I guess he beat her --- |
| | - - - |
| Prosecutor: | Did you ever speak – we know you didn't see Sonya after that. Did you speak to her after that? |
| M. Wolfe: | She called me twice on the phone. |
| Prosecutor: | Do you remember what time the first call was? |
| M. Wolfe: | Somewhere – I can't say for sure, around 2 o'clock. |
| Prosecutor: | Do you recall what she said? |
| M. Wolfe: | She wanted to see if [Petitioner] had called home and that the police had pulled him over, and then she told me that someone had told her that he had a knife to her back, but she didn't see it. |

(7/13/06 Trial Tr. at 115-16).

**(b)**

The state court rejected Petitioner's assertion that his counsel were ineffective for failing to challenge the above-cited testimony at trial and on direct review because, *inter alia*, his underlying contention that the testimony at issue was inadmissible lacks merit. Petitioner argues in his habeas petition that the state court erred in ruling that the testimony was admissible under state rules of evidence. The state court's decision regarding the admissibility of evidence under the Pennsylvania Rules of Evidence, however, is unreviewable by this court. Estelle, 502 U.S. at 67-68 (federal courts may not "reexamine state court determination on state-law questions"); Wells v. Pestock, 941 F.2d 253, 256 (3d Cir. 1991) ("Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.").

Petitioner also argues that the admission of Wolfe's out-of-court statements violated his federal constitutional rights because they should have been barred under the Confrontation Clause. The statements, however, were all made to Wolfe's family, friends, and acquaintances and were non-testimonial. Therefore, they are not covered by the Confrontation Clause protections. See discussion of Crawford and its progeny, *supra.*

In conclusion, because Petitioner cannot establish that the testimony at issue was admitted in violation of state law or the federal constitution, he cannot demonstrate that his counsel were ineffective for failing to object to the testimony at trial and on direct review, or that he was prejudiced. Most importantly, he has failed to demonstrate that this Court can disturb the state court's adjudication of this claim under AEDPA's deferential standard of review. 28 U.S.C. § 2254(d). He cannot show that the

state court's adjudication "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 786-87. Therefore, this claim must be denied.

### 4. Failure to Object to Carol Pond's Testimony

At Petitioner's trial, Carol Pond testified for the Commonwealth. She had worked at the Chesterfield County Victim Witness Assistance Program in Chesterfield, Virginia. As part of her duties, she provided services to victims of crime and referred them to services in the community, such as shelter and clothing. (N.T. 7/13/06 at 27-28).

When Wolfe was living in Virginia, she had called Pond. Pond testified that Wolfe said "[s]he needed clothing, she had nowhere to stay, her glasses were broken[.]" (Id. at 28). Pond then recounted what Wolfe had told her about the beatings that Petitioner had inflicted upon her that month. (Id. at 28-33). A few days later, Pond explained, she met with Wolfe in person, and Wolfe "repeated the same story about [Petitioner] beating her around." (Id. at 34). Pond explained that she "offered [Wolfe] shelter at the local shelter. I called a community service we have for clothing[.]" (Id.) Pond also was able to get Wolfe a new pair of eye glasses. (Id.)

In his first claim for relief, Petitioner contends that Pond's testimony "violated the prohibition against testimony hearsay as articulated in Crawford," and that his trial counsel was ineffective for failing to object to her testimony during the trial and in post-trial motions. He also contends that his appellate counsel should have raised the issue on direct appeal.

Petitioner raised this same claim in his PCRA proceeding. (CP Dkt. No. 40B at 8, 11-15, 18-19; CP Dkt. No. 43 at 5-6). He claimed that the statements that Wolfe made to Pond were testimonial. In support, he relied upon documents that he contends shows that Pond's employer, the Chesterfield

County Victim Witness Program, was under the directions of the Chesterfield County Office of the Commonwealth Attorney for Chesterfield County. (See Exs. A & B to CP Dkt. No. 43).

In resolving this claim, the state court held that because Petitioner's trial counsel had sought generally to bar the Commonwealth from introducing Wolfe's out-of-court statements, he could not be found to be ineffective. (CP Dkt. No. 42, <u>Smith</u>, 3293 of 2005, slip op. at 7). However, although it is true that trial counsel had filed a pre-trial motion to suppress Wolfe's out-of-court statements, it does not appear that Pond's proposed testimony was discussed at the pre-trial hearing and in the pre-trial motions. When the court made its pre-trial ruling on the motion to suppress, the issue before it was whether the police officers, hotel and hospital staff, and Wolfe's family and friends could recount her out-of-court statements to them. Pond does not fit into any of those categories, and Petitioner's argument is that trial counsel should have realized that fact and raised an objection to her testimony at trial. It is a fair argument that the state court did not address. Therefore, AEDPA's standard of review does not apply and this Court will review this claim *de novo*.

The Court will assume without deciding that, as Petitioner asserts, Wolfe's statements to Pond were testimonial and that if counsel had challenged Pond's testimony about Wolfe's out-of-court statements to her, that testimony would have been excluded from trial. Even with that favorable (and debatable) assumption, this claim still fails because Petitioner cannot show that he was prejudiced. That is, he has not demonstrated that there is a reasonable probability that, if he counsel had successfully barred the admissions of Wolfe's out-of-court statements to Pond, that the outcome of his trial would have been different.

Petitioner argues that the jury would have convicted him of third-degree murder, and not first-degree murder, if Pond had been prevented from testifying about Wolfe had stated to her. The Court rejects that argument. As the state court noted, there was a "copious amount of properly admitted

evidence that was probative of [Petitioner's] specific intent to kill Sonya Wolfe." (CP Dkt. No. 42, Smith, No. 3293 of 2005 at 11, citing CP Dkt. No. 39, Smith, No. 3293 of 2005, slip op. at 6-10 (setting forth "numerous specific examples of other evidence submitted at trial showing Petitioner's specific intent to kill the victim.") Thus, "in light of the overwhelming amount of properly admitted evidence showing Petitioner's guilt," he was not prejudiced by his counsels' failures to object to the admission of Wolfe's out-of-court statements to Pond.

### 5. Failure to Object to the Prosecutor's Prejudicial Closing Argument

In his final claim, Petitioner contends that his trial counsel was ineffective for failing to object to alleged instances of misconduct during the closing arguments. He argues that the prosecutor "literally eviscerated [his] character by relating irrelevant 'spousal abuse.'" (ECF No. 1 at 18). In denying this claim, the state court held:

> [T]estimony related to violence between Petitioner and his victim, including the beating sustained by the victim at the hands of Petitioner while they lived in Virginia, was properly admitted under Pa.R.E. 404(b), as it showed motive, intent, absence of mistake or accident, and the *res gestae* (natural history) of the case. Therefore, although made using an oratory tone, the prosecution's references to prior instances of physical violence are properly founded in the evidence. See N.T. Trial, Day 5, July 14, 2006 at 52.

> Similarly, Petitioner objects to the prosecution's description of defense witness Rhonda Sopher's testimony given during cross-examination. See Post Conviction Relief Act Petition, filed March 19, 2008, at 28. While Ms. Sopher actually stated that she believed Petitioner "was going to go find her and probably kick the crap out of her," and the prosecution stated that she thought he would "just give her a good beating," the Court finds that this is merely a difference in semantics and that the prosecution was arguing the stated evidence with oratorical flair.

> In addition, the defense's closing argument attacked the veracity of the victim, Sonya Wolfe, as well as the witnesses who testified on behalf of the Commonwealth. See N.T. Trial, Day 5, July 14, 2006 at 29-30, 40, 50-51. The prosecution's references to Linda Deimer's testimony regarding prior violence and Carol Pond's testimony specifically regarding the beating incident in Virginia are directly responsive to the defense's attacks

on the witnesses' credibility and the victim's credibility regarding statements she made to others.  See Id. at 29, 75-77.

In short, for the above stated reasons, these comments made during the prosecution's closing did not constitute prosecutorial misconduct and did not serve to prejudice the jury; therefore, counsel cannot be ineffective for failing to object to them.

(CP Dkt. No. 42, Smith, 3293 of 2005, slip op. at 23-24).

Petitioner also argues that his counsel should have objected when the prosecutor stated that the evidence showed that he was "depraved," "manipulative," and a "murderer."  (ECF No. 1 at 18).  In rejecting this contention, the state court held:

When read in its entirely, the portion of the argument [about which Petitioner complains] states the following:

I told you in my opening, ladies and gentlemen, in order to get to this issue of intent, it's hard to get into someone's mind, there is no super brain.  In other words, to get to this issue of intent, you look at the past, you look at what happened during, and you look at what happened after.  And ladies and gentlemen, with everything you have heard in the last five days, he intended to kill her, I submit, he premeditated it and we'll talk about what that means.  But the defendant, you know now, from what you've heard, is depraved, he is manipulative, and what you definitely know about him is, he's a liar.  And of course, with all of that, he's a murderer.

See N.T. Trial, Day 5, July 14, 2006 at 52-53.  Taken in the context of the argument, it becomes clear that the prosecution is not stating his own personal conclusions; rather, he is arguing inferences that can be logically drawn from the evidence presented.  As such, the jury was not biased by these comments and no prejudice resulted.

(CP Dkt. No. 42, Smith, 3293 of 2005, slip op. at 24-25).

Petitioner also argues that the prosecution told the jurors that there was evidence which was not brought out at trial, and that this unheard evidence proved that he was guilty of first-degree murder.  In rejecting this assertion, the state court held:

The prosecution stated the following in its closing argument:

In other words, you have to believe he's a truthful person, I would submit, in order to find him not guilty of First Degree Murder.  And you just can't do that, ladies and gentlemen, because, you know, the fourteen strangers

19

> that came in here, you don't have the benefit as the attorneys have of all the information, all the documents and *evidence that we've had for the last eleven months, you don't have that benefit. But you certainly know from the evidence in the last five days,* what you have viewed, that he's untruthful. Let's go through that –

> N.T. Trial, Day 5, July 14, 2006, at 54 (emphasis added). While the prosecutor may have stated his argument more artfully, his argument is *not* that the jury had not seen all of the relevant evidence. Rather, the prosecution was stating that the attorneys have been able to view the evidence for eleven (11) months, where the jurors had only five (5) days to make a determination on the evidence. Id. Viewing the argument in its entirety, it is apparent that Petitioner has misconstrued the meaning of the above argument. Therefore, because the prosecutor's statement has no prejudicial value whatsoever, this claim is meritless.

(CP Dkt. No. 42, Smith, 3293 of 2005, slip op. at 25-26).

There is no basis for this Court to disturb the state court's adjudication of this claim under AEDPA's deferential standard of review. 28 U.S.C. § 2254(d). As noted above, to prevail on a claim that the state court has adjudicated on the merits, Petitioner must demonstrate that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 786-87. See also Wiggins v. Smith, 539 U.S. 510, 521 (2003) (it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of United States Supreme Court precedent); Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold"). He has not met that high threshold, and therefore this claim must be denied.

20

## C.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Applying that standard here, jurists of reason would not find it debatable whether Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.


## III.    CONCLUSION

For the foregoing reasons, it is respectfully that recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to do so will waive the right to appeal.  <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  October 11, 2011

cc:     The Honorable Sean J. McLaughlin
        United States District Judge